MALKOWSKI v. OLFS.

1. Pleading—Variance—Declaration.
   Where proof of a portion of the facts alleged in plaintiff's declaration will warrant a recovery, a failure to prove the remaining allegations is immaterial.

2. Same.
   Evidence introduced without restriction is available in support of any issue that it tends to prove within the pleadings.

3. NEGLIGENCE—PLEADING.

An allegation and evidence that the defendant released his hold on a heavy box which plaintiff was helping him unload, permitting it to fall on plaintiff, entitles the plaintiff to a verdict, notwithstanding the failure to prove further allegations that the defendant ordered the driver of the wagon to turn the horse at the time the box fell.

4. SAME—TRIAL—SPECIAL QUESTION.

A special question which involved the question whether or not defendant ordered the driver to turn the horse, and which was therefore inconclusive of the plaintiff's right to recover, although answered in the negative, is not sufficient to support a judgment for the defendant *non obstante veredicto*.

Error to Wayne; Murfin, J. Submitted April 6, 1910. (Docket No. 8.) Decided May 7, 1910.

Case by Joseph Malkowski against Peter Olfs for personal injuries. A judgment for defendant *non obstante veredicto* is reviewed by plaintiff on writ of error. Reversed.

*James R. Neill*, for appellant.

*William Look* (*Duncan C. Beath*, of counsel), for appellee.

This is an action to recover damages for a personal injury received by the plaintiff while in the employ of the defendant on February 13, 1908. At said date the defendant was engaged in the business of manufacturing, selling, and delivering safes, vaults, large iron and steel boxes, etc., in the city of Detroit, and had been so engaged for a number of years. The plaintiff had been in the employ of the defendant for about five months before the injury complained of as a common helper, and had assisted in the delivery of safes, vaults, and boxes before the day above named. Plaintiff had previously worked in the Krupp gun factory in Germany. On the day of the injury the plaintiff, assisted by the defendant and others, loaded an iron or steel ash-box, weighing from 800 to

1,000 pounds, on a truck, for the purpose of delivery in the rear of the Scripps property on Trumbull avenue, Detroit. The delivery was made and had under the direct control of the defendant. Upon the arrival of the truck with said box at said premises, the truck driver drove to a place indicated by the defendant. At that point the truck driver blocked the wheels of the truck with two stakes, and thereupon went to the head of his horse, and stood, holding the bits. As soon as the truck was stationary and blocked, another man and the plaintiff went upon the truck and shoved the box towards the rear end of the truck. While so engaged the defendant directed the plaintiff to come down from the truck and stand near the rear wheel thereof to assist in guiding the box in case it swerved either way. And the plaintiff claims that while he had hold of one corner of said box, and the defendant had hold of the other corner of the rear end thereof, the defendant ordered the teamster to turn the horse a little, and at the same time the defendant released his hold of the opposite side of the box, causing the whole weight of the box to be precipitated from the rear end of said truck to and against the plaintiff, throwing him to the ground, and badly crushing his right leg and left foot.

The declaration alleges in one count a number of acts of negligence on the part of the defendant. The following excerpts from the declaration will illustrate our meaning:

" That, while plaintiff, defendant, and the other employé of the defendant were engaged in the removing of said iron box from the said truck at the place of delivery, the defendant carelessly, negligently, and wrongfully ordered and required plaintiff to take a position between said box and a high fence; that the place where plaintiff was required to stand, while in this position, was covered with ice and very slippery; that during the process of unloading said box was shifted to the rear of the truck so that one-half of the same projected past the rear end; that while in that position the defendant personally ordered the driver of said truck to drive forward from underneath said box, the defendant at the same time releasing his hold on the

opposite side, and causing the whole weight of said box to bear down upon plaintiff; that, owing to the ice underneath plaintiff's feet, and the sudden slipping and falling of said large box, plaintiff was thrown to the ground and badly injured, as hereinafter set forth."

After alleging the duty of defendant, the declaration proceeds in this language:

"Yet the said defendant  *  *  *  did not provide a proper system of removing said box from said truck, and did not refrain from ordering the driver of said truck to drive from underneath the said box while the plaintiff was the only support of the same, and did not inform plaintiff that he, defendant, had released his hold on said box, and that plaintiff was the only support of the same, and did not refrain from attempting to unload said box at a dangerous place, where the ground was covered with ice, and did not inform plaintiff that he, defendant, was about to order the driver of said truck to drive from underneath said box, and did not refrain from releasing his hold on the opposite side of said box without first warning plaintiff that he intended to do so.   By reason whereof, on the day and date aforesaid, while the defendant was in default as aforesaid, and while the plaintiff was free from any contributory negligence or want of care on his part, *and owing to the defendant releasing his hold on said box, and ordering the driver of said truck to suddenly drive forward*, the said box was precipitated from the rear of said truck to and against the plaintiff, throwing him heavily to the ground, and badly crushing his right leg and left foot," etc.

Upon the trial the plaintiff testified in reference to the circumstances of the injury, as follows:

"After the tank had been lifted up by the Belgian, who was on the wagon, Mr. Olfs took hold of the left side, and I was on the right side.   Both of us were behind the wagon, and the Belgian lifted it up like that (illustrating). They slid it a little, but not much, and the boss, Peter Olfs, said he should turn the horse.   He said, 'Turn the horse,' to the teamster, and, when the teamster started turning the horse, the wagon turned a little also.   When the wagon turned, Mr. Olfs said, 'Look out!' and everything came from the wagon, and it fell upon me.   When

the tank fell upon me, Mr. Olfs stood at the wagon. As the horse turned the tank was too heavy, and Peter Olfs let go. It was too heavy, and I could not hold it up after he let loose, and I fell down and the tank fell upon me. It struck me here on my right leg, and it caught me on the left leg. The right leg was broken. The left knee was not. They took the stakes from the wagon, and raised the tank and pulled me out.

" *The Court:* Did Mr. Olfs call to look out, before he let go the tank, or after he let go ?

"*A.* He said, 'Look out!' and let go.

"*Q.* At the same time ?

"*A.* At the same time.

" *Mr. Look:* Didn't he say, 'Look out!' and then run away ?

"*A.* Let go and went away. He said 'Look out!' and walked away, and the tank fell upon me."

On cross-examination the plaintiff testified in part :

" There was ice there, but I didn't slip on the ice. The ice didn't have anything to do with my falling. Mr. Olfs asked the teamster to move the horse. He said, 'Turn the horse a little on the side,' in German. I knew this teamster.  *  *  *

"*Q.* Now, you think that Mr. Olfs and the Belgian and yourself might have held this box up, do you ?

"*A.* I think it was too heavy for the three of us.

"*Q.* You think it was too heavy for the three ; and then the Belgian let go on the top, did he ?

"*A.* As he turned the wagon, the box fell off.

"*Q.* What were you expecting to do with this box that was balanced on the rear of that truck ?

"*A.* Hold fast to it. I and Olfs were holding it."

On the part of the defendant, the driver in charge of the horse testified that the horse did not move at all from the time they started to move the box until it was on the ground, and that the defendant did not order him to move the horse. The defendant testified that the plaintiff had been out delivering large safes or trucks or heavy objects during all of the time he had worked for defendant; that plaintiff was engaged as a general helper. Defendant denied that he told plaintiff to hold onto the box, but told him to stay by the side of it and watch it. He testified

that he, defendant, had no hold of the box at all. He said:

"I never touched the box at all. I never called out to the driver to move his horse, when he had the box almost off the truck. There was no occasion to move the horse. He could not move because the truck was blocked. The horse never moved at all. He stood still. I told plaintiff to 'Look out! The box is coming.'"

At the close of plaintiff's evidence the attorney for the defendant moved for a directed verdict on the ground:

(1) That no negligence on the part of the defendant had been shown.
(2) That the risk was assumed by the plaintiff.
(3) If there was any negligence, it was the negligence of a fellow-servant.
(4) That the plaintiff was guilty of contributory negligence.

The motion was denied.

At the close of all the evidence in the case, the attorney for the defendant renewed his motion for a directed verdict, and added as another ground for the motion—that there was a variance between the declaration and the proof, the declaration alleging that it was a slipping on the ice and frozen ground that caused plaintiff to fall under the box; that the testimony shows an altogether different state of facts, it being claimed by the testimony of plaintiff that he was holding the box, and that it was because defendant let go of the box that it fell. The circuit judge again denied the motion, but stated that he thought there was only one issue and that was whether or not the jury believed the testimony of the plaintiff that the defendant ordered the horse to move without warning the plaintiff. In the charge the circuit judge used the following language:

"On the other hand, if you should find that the master and this injured man were working together, unloading this box from the wagon, and the master without a moment's warning or notification let go of his side so that it precipitated the entire weight upon the plaintiff, the plain-

tiff not having any reason to apprehend any action of that sort, then I think that would be negligence on the part of the master."

The circuit judge submitted the following special question to the jury:

"Did the defendant, Peter Olfs, order the truck driver, Graham, to move his truck forward, while the steel box was being unloaded?"

The jury returned a general verdict for plaintiff for $500 damages, and answered the said special question in the negative, whereupon the court directed a judgment for the defendant, under the provisions of section 10237, 3 Comp. Laws, on the ground that the answer to the special question was inconsistent with the general verdict, and that the answer to the special question governed and was controlling. Error was assigned by the plaintiff upon this ruling and direction, and he has brought error, and the single question presented is whether the court erred in entering a judgment for the defendant.

Stone, J. (*after stating the facts*). This declaration was not demurred to. The logic of the verdict of the jury was that the defendant, without notice or warning to the plaintiff, let go his hold upon the box, and precipitated the entire weight upon the plaintiff, and that the box fell upon the plaintiff and injured him, and that the defendant did not order the truck driver to move the truck forward while the box was being unloaded. If the court was correct in that part of the charge quoted, and we think it was, the jury might find the defendant liable, even although he did not order the driver to move the truck forward. Where proof of a portion of the facts alleged will support a recovery, a failure of proof as to the rest is immaterial. *Marquet* v. *La Duke,* 96 Mich. 596 (55 N. W. 1006). Evidence introduced without restriction is available on any issue which it tends to prove, and which is within the pleadings. 17 Cyc. p. 820.

The allegation that the defendant, without notice or

warning to the plaintiff, released his hold upon the box, and thus precipitated it upon the plaintiff, and injuring him, stated a substantive cause of action, and, if proved, would entitle the plaintiff to recover, although the jury found that the defendant did not order the driver to move the truck. If this is so, the special question was not controlling, and the answer in the negative was not inconsistent with the general verdict for the plaintiff. *Pigott* v. *Engle*, 60 Mich. 221 (27 N. W. 3); *Banner Tobacco Co.* v. *Jenison*, 48 Mich. 459 (12 N. W. 655); *Cousins* v. *Railway Co.*, 96 Mich. 386 (56 N. W. 14); *Central Savings Bank* v. *O'Connor*, 132 Mich. 578 (94 N. W. 11, 102 Am. St. Rep. 433); *Burke* v. *Electric Co.*, 147 Mich. 172 (110 N. W. 524); *Ward* v. *Campau*, *ante*, 85 (125 N. W. 734). We think that the question was inconclusive, and in no sense controlling of the general verdict. For the error pointed out, the judgment of the circuit court will be reversed.

While we might direct the circuit court to enter a judgment in accordance with the general verdict, owing to the course which the trial took, we have concluded to order a new trial, and the same is ordered accordingly.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.